UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRADLEY A. WOOTEN,

                Plaintiff,

v.

SCOTT HOFTIEZER, WILLIAM B. KELLEY, TRACY L. THOMPSON and BUREAU OF HEALTH SERVICES,

                Defendants.

Case No. 20-CV-124-JPS

**ORDER**

      Plaintiff Bradley A. Wooten, who is incarcerated at Kettle Moraine Correctional Institution, proceeds in this matter *pro se*. He alleges that the defendants named in this matter violated his constitutional rights by failing to treat his chronic and severe back pain in violation of the Eighth Amendment, and for retaliating against him for using the inmate complaint process in violation of the First Amendment. (Docket #1, #18-1). He also alleges state law negligence claims. *Id.* This matter comes before the Court on Plaintiff's motions to proceed *in forma pauperis*. (Docket #12, #15). Plaintiff was assessed, and paid, a $36.41 initial partial filing fee. *See* (Docket #13). Pursuant to Plaintiff's request, the Court will screen the most recent complaint, (Docket #18-1). *See* Fed. R. Civ. P. 15(a).

1.    **LEGAL STANDARD**

      The court shall screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109–10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations

"must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## 2. RELEVANT ALLEGATIONS

Plaintiff has a long history of back pain stemming from two ruptured discs in his upper spine. He also has severe plantar fasciitis in his feet. Prior to April 2018, he took Lyrica and Gabapentin to successfully manage his pain. In April 2018, while an inmate at Dodge Correctional Institution ("DCI"), Plaintiff saw Doctor Scott Hoftiezer ("Hoftiezer") for his intake health examination. Plaintiff told Hoftiezer about his lengthy and significant medical history, but Hoftiezer never obtained Plaintiff's medical records from his former providers or performed a thorough examination. Instead, Hoftiezer cancelled Plaintiff's prescription for Alprazolam, which Plaintiff had been taking for anxiety, and Gabapentin, which helped with the pain. Plaintiff alleges that there was no reason to cancel these medications.

Although Hoftiezer diagnosed Plaintiff with chronic back pain, he failed to follow chronic pain protocols with Plaintiff. He did not perform

any diagnostic tests, provide effective treatment, or recommend therapy. He also "made it difficult" to obtain ice for Plaintiff's ice bag, though Plaintiff does not explain how. (Docket #18-1 at 4). In short, Plaintiff alleges that Hoftiezer virtually ceased to provide pain interventions for Plaintiff's excruciating back pain.

In late June 2018, Plaintiff was relocated to Kettle Moraine Correctional Institution ("KMCI"). At KMCI, he saw Doctor William Kelley ("Kelley"). Plaintiff told Kelley about his medical history, his back condition, as well as how the changes that Hoftiezer had made to his treatment had increased Plaintiff's pain. Kelley diagnosed Plaintiff with "severe and chronic pain," but told him that due to certain policies at the Wisconsin Department of Corrections, Kelley could not prescribe Plaintiff with the Gabapentin, which Plaintiff sought because it had helped in the past. *Id.* at 5. Instead, Kelley prescribed Plaintiff with duloxetine, which was contraindicated for Venlafaxine, an antidepressant that Plaintiff was on, and which made Plaintiff very nauseous.

In the months that followed, Plaintiff implored Kelley to seek permission from his superiors to treat Plaintiff with Gabapentin. He asked Health Services Unit ("HSU") Manager William McCreedy ("McCreedy") to intervene, but McCreedy declined. Plaintiff also filed an inmate complaint to obtain pain relief and treatment, but was denied help. In response to another health services request, Kelley prescribed Plaintiff acetaminophen, but did not examine Plaintiff in person. Plaintiff was left to suffer an ineffective treatment regimen.

Like Hoftiezer, Kelley also failed to impose any interventions such as a lower bunk requirement or a work restriction to accommodate Plaintiff's back pain. As a result, Plaintiff fell several times when he

attempted to climb into his upper bunk, and nearly received disciplinary action for refusing to use a shovel for work. Kelley ignored Plaintiff's requests for different treatment options.

In July 2018, Kelley failed to finish a sleep evaluation study that would have qualified Plaintiff for a sleep apnea exam, claiming, halfway through, that it was clear that Plaintiff did not have sleep apnea. In April 2019, Plaintiff was re-evaluated and qualified for a sleep apnea exam, which demonstrated that he had significant sleep apnea events.

While at KMCI, Plaintiff also interacted with and was treated by Nurse Tracy Thompson ("Thompson"). Thompson, too, was aware of Plaintiff's medical history and ongoing, severe pain, yet offered an obstructionist attitude when Plaintiff asked her to reinstate his lower bunk restriction. She told him that he never had a lower bunk restriction to begin with, and failed to take any steps to help him receive a lower bunk restriction. After an indeterminate number of months corresponding with Plaintiff about his pain, Thompson—in conjunction with Kelley—finally prescribed Plaintiff eight weeks of physical therapy, which Plaintiff found too painful to complete.

In May 2019, when Kelley retired, Thompson refused to place Plaintiff on a waiting list to see a new doctor—though it is not clear if this was out of spite, or because there was no waiting list. By this point, Plaintiff had prescriptions for duloxetine, amitriptyline, acetaminophen, and ibuprofen. Thompson declined to prescribe Plaintiff additional medication—he sought Gabapentin, Lyrica, or Tramadol—and told him that he needed to tough it out. She recommended that he continue with his physical therapy exercises.

On two occasions, Thompson prescribed Plaintiff with an antibiotic to which he was allergic. When he told her about the allergic reactions, she responded that it was the only option available, even though other nurses told him that there were alternatives.

Plaintiff continued to submit health services requests to see a physician and receive more effective pain treatment. By November 2019, he was finally placed on a list to see a provider, and was again seen by Hoftiezer, who had originally treated Plaintiff at DCI. Plaintiff told Hoftiezer that the original treatment—i.e., discontinuing the Gabapentin—had made Plaintiff's pain significantly worse. Plaintiff pressed Hoftiezer to perform a new MRI, since his last MRI had been taken in the early 2000s. Plaintiff received an X-ray in November 2019 and an MRI in December 2019. The new MRI confirmed herniated discs in the upper spine, as well as other unspecified problems that caused Plaintiff additional pain. Hoftiezer said he would schedule a meeting with the HSU to discuss plaintiff's pain, but as of early April 2020, Plaintiff has not received any effective medical interventions.

Plaintiff also alleges that KMCI's Health Services Unit ("HSU")'s Special Needs Committee, which examines and approves lower bunk restrictions, purposefully prevented him from obtaining and keeping a lower bunk restriction. They denied Plaintiff's requests on the grounds that it failed to "meet criteria as defined in policy." *Id.* at 9. There was no explanation of the policy or criteria in question. There was also no way to appeal the decision.

Plaintiff had previously submitted several inmate complaints regarding the Health Services Manager, Julie Ludwig ("Ludwig"). Ludwig also sits on the Special Needs Committee, which summarily denied

Plaintiff's lower bunk requests despite his lengthy history of pain and falls from the upper bunk. Plaintiff alleges that the denial of the lower bunk restriction was in retaliation of Plaintiff's prior inmate complaints.

3.  ANALYSIS

    3.1 Deliberate Indifference and Negligence

To sustain such a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). To show that a delay in providing treatment is actionable under the Eighth Amendment, Plaintiff must also provide evidence that the delay exacerbated his injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016).

To sustain a claim for medical malpractice, as with all negligence claims, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). "In short, a claim for medical malpractice requires a negligent act or omission that causes an injury." *Id.* The Court may exercise supplemental jurisdiction over any negligence claims that are related to the federal constitutional violations. 28 U.S.C. § 1367.

### 3.1.1 Hoftiezer

Plaintiff has sufficiently stated two claims for deliberate indifference against Hoftiezer. First, he alleges that in April 2018 he told Hoftiezer about the chronic and severe pain associated with his herniated disc, but Hoftiezer ceased Plaintiff's medication and basically failed to treat Plaintiff for his back condition. Assuming that Plaintiff's allegations are true, this is sufficient to allege that Hoftiezer actually knew of a serious medical need—i.e., Plaintiff's herniated discs and back pain—and stopped effective treatment, which exacerbated Plaintiff's pain.

Second, Plaintiff alleges that in November 2019, Hoftiezer was re-apprised of Plaintiff's chronic and severe pain associated with his herniated disc. This time—after much pleading from Plaintiff—Hoftiezer ordered an MRI and X-ray, which confirmed Plaintiff's back condition in December 2019. However, as of April 2, 2020, Hoftiezer has failed to provide effective therapeutic interventions for Plaintiff. This, too, sufficiently alleges that Hoftiezer actually knew of a serious medical need—i.e., Plaintiff's herniated discs and back pain—and failed to make any attempt to treat it, which exacerbated Plaintiff's pain.

In each of the above instances, Plaintiff also alleged that Hoftiezer's care fell below the acceptable medical standard because he failed to follow standard pain protocols and did not provide effective treatment to Plaintiff, his patient. Therefore, Plaintiff will also proceed on two claims of medical negligence against Hoftiezer.

### 3.1.2 Kelley

Plaintiff has sufficiently stated a claim for deliberate indifference against Kelley. Plaintiff alleges that when he arrived at KMCI, he told Kelley that his current treatment regimen did not work, that his pain was

increasing, and his back condition deteriorating—thereby putting Kelley on notice of a serious medical condition. In response, Kelley refused to change Plaintiff's course of treatment to one which Plaintiff knew worked, and instead prescribed a pain medication that interacted poorly with one of Plaintiff's antidepressants. Kelley failed to order an MRI or take other steps to diagnose and treat Plaintiff's worsening back pain. Finally, Kelley failed to order various restrictions, such as a lower bunk restriction, a work restriction, or an extra pillow restriction, which would have ameliorated some of Plaintiff's discomfort. Liberally construed, this is sufficient to state a claim of an Eighth Amendment violation. Relatedly, Plaintiff has also stated a claim for negligence because he alleges that Kelley's treatment—or lack thereof—of his back condition fell below the standard of care.

Plaintiff also alleges that Kelley failed to complete a sleep apnea study in July 2018. Plaintiff has not alleged that Kelley knew Plaintiff had sleep apnea and knowingly failed to treat it. Rather, Plaintiff alleges that Kelley stopped the questionnaire half-way through after determining that it was clear that Plaintiff did not have sleep apnea. Nine months later, in April 2019, Plaintiff underwent another sleep apnea test, at which point a diagnosis was confirmed. The allegations do not give rise to a claim of deliberate indifference because Plaintiff has not sufficiently alleged that Kelley knew of the sleep apnea and ignored it. However, under the liberal pleading standards used to evaluate *pro se* complaints, the Court finds that it does state a claim for negligence.

### 3.1.3 Thompson

Plaintiff has sufficiently stated two claims for deliberate indifference against Thompson. First, he alleges that he had regular contact with Thompson, such that she knew that he had a chronic pain condition and

Page 9 of 15
Case 2:20-cv-00124-JPS   Filed 04/21/20   Page 9 of 15   Document 20

that his treatment was not effective. She also knew that he struggled with his upper bunk because he requested that she place him on a lower bunk. Instead of taking steps to help him, Thompson told him that he never had a lower bunk. In response for his additional requests for treatment, she told him to tough it out. Liberally construed, this is sufficient to state a claim for deliberate indifference to Plaintiff's serious medical need. For the reasons explained above, Plaintiff also alleges a cause of action for negligence, because he alleges that Thompson breached her duty or care towards Plaintiff when she failed to take reasonable steps to address his pain.

Second, Plaintiff alleges that Thompson knowingly prescribed him antibiotics for an infection after he told her that he was allergic to them. These allegations, if true, state a claim for deliberate indifference in violation of the Eighth Amendment, as well as a claim for negligence under Wisconsin law.

### 3.1.4 Wisconsin Department of Corrections' Bureau of Health Services

The defendant "Bureau of Health Services" is not the correct defendant for the constitutional claims. Only those officials who are directly responsible for a constitutional violation may be sued under Section 1983. *Minix v. Canarecci*, 597 F.3d 824, 833–34 (7th Cir. 2010). Moreover, sovereign immunity protects the state and its "arms or agencies," including the Department of Corrections' Bureau of Health Services, from suit for damages. *Lister v. Bd. of Regents*, 240 N.W.2d 610, 617 (Wis. 1976); *Rogers v. Dep't of Corr.*, 713 N.W.2d 193 (Table), 2006 WL 559447, at *2 (Wis. Ct. App. 2006) (holding that the Department of Corrections could not be sued in tort for negligent food preparation unless it consented to suit). There is no indication that the Bureau of Health Services has consented to suit;

therefore, the Bureau of Health Services will be dismissed from the complaint.

### 3.2 First Amendment

To state a First Amendment retaliation claim, Plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Additionally, "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." *Howland v. Kilquist*, 833 F.3d 639, 644 (7th Cir. 1987) (quoting *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978)).

Generously construed, Plaintiff's allegations state a claim for retaliation in violation of the First Amendment against Julie Ludwig, who is not named on the caption page but whose retaliatory actions are discussed in the complaint. Plaintiff alleges that he engaged in protected activity by filing inmate complaints regarding his pain. *Watkins*, 599 F.3d at 798. He alleges that Julie Ludwig, who manages the HSU and who sits on the Special Needs Committee and evaluates restriction requests, delayed and denied his low bunk requests and other obviously needed and easily disbursed restrictions, such as extra pillows, in direct retaliation for his complaints. The Court is satisfied that this type of treatment would deter submission of future inmate complaints.

### 3.3 Miscellaneous Motions

Plaintiff's motions for a preliminary injunction must be denied. (Docket #3, #14). Each motion is only a page long, and contains brief allegations regarding the withholding of pain treatment. While brief allegations are sufficient to establish a claim at screening, they do not meet the threshold requirements of a preliminary injunction, which requires a showing of the following: "1) a likelihood of success on the merits, 2) irreparable harm if the preliminary injunction is denied, and 3) the inadequacy of any remedy at law." *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). Plaintiff has not provided any showing that he is likely to success on the merits, or that his harm is irreparable. Therefore, a preliminary injunction is inappropriate.

Plaintiff has also filed an updated motion to proceed *in forma pauperis*, which contains additional information about his financial circumstances. (Docket #15). Therefore, the later motion to proceed *in forma pauperis* will be granted, and the earlier motion (Docket #12) will be denied as moot.

Finally, the Court will deny Plaintiff's motion for recurrent automatic payments from his inmate accounts. (Docket #17). The Court's practice is to order the agency having custody of the plaintiff to collect from his institution trust account the balance of the filing fee on a monthly basis, as detailed in the order lines below. Thus, Plaintiff's motion for recurrent automatic payments (Docket #17) will be denied as moot.

### 4. CONCLUSION

Pursuant to the analysis above, Plaintiff may proceed on the following claims: two claims of deliberate indifference and two claims of negligence against defendant Hoftiezer; one claim of deliberate indifference

and two claims of negligence against defendant Kelley; two claims of deliberate indifference and two claims of negligence against defendant Thompson, and one claim of retaliation against Julie Ludwig, who shall be added as a defendant.

Accordingly,

**IT IS ORDERED** that Plaintiff's second motion for leave to proceed *in forma pauperis* (Docket #15) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motions for preliminary injunction (Docket #3, #14) be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's first motion to proceed *in forma pauperis* (Docket #12) and his motion for recurrent payments (Docket #17) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend the complaint (Docket #18) be and the same is hereby **GRANTED**; Plaintiff's Amended Complaint (Docket #18-1) shall be the operative complaint in this action;

**IT IS FURTHER ORDERED** that Defendant Bureau of Health Services be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Defendant Julie Ludwig be **ADDED** to the docket as a defendant;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the Amended Complaint and this Order have been electronically sent to the Wisconsin Department of Justice for service on Defendants Hoftiezer, Kelley, Thompson, and Ludwig;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court,

Defendants shall file a responsive pleading to the Amended Complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $313.59 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that pursuant to the Prisoner E-Filing Program,[1] Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If Plaintiff is no longer incarcerated at a Prisoner E-Filing Institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 21st day of April, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge