# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BRADLEY A. WOOTEN,<br><br>                  Plaintiff,<br><br>v.<br><br>SCOTT A. HOFTIEZER, WILLIAM B. KELLEY, TRACY L. THOMPSON, and JULIE LUDWIG,<br><br>                  Defendant. | Case No. 20-CV-124-JPS<br><br>**ORDER** |

      On April 21, 2020, the Court screened Plaintiff's lengthy complaint, and permitted him to proceed against defendants Scott Hoftiezer ("Hoftiezer"), William B. Kelley ("Kelley"), and Tracy L. Thompson ("Thompson") on specified claims of deliberate indifference in violation of the Eighth Amendment, as well as negligence claims. Additionally, the Court permitted Plaintiff to proceed against defendant Julie Ludwig on a claim of retaliation, in violation of the First Amendment. (Docket #20). On May 1, 2020, Plaintiff submitted a document consisting of supplemental information for the complaint. (Docket #24). As a preliminary matter, this is not a proper method for supplementing the complaint—complaints may not be amended piecemeal. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). However, in lieu of prompting a protracted amendment process, the Court will address Plaintiff's claims below, as they do not warrant an amended complaint or another screening order.

First, Plaintiff seeks to make a correction in the Court's characterization of his completion of physical therapy. In his amended complaint, Plaintiff explained that he was

> [G]iven 8 weeks of [physical therapy]—which only exacerbated the pain. It became so bad that I was unable to walk at all. If anything, on belief and information, the stretches I was ordered to perform and repeat caused more damage. I communicated the escalating pain levels to the physical therapist and **that I could not continue doing her stretches.** Her orders caused extreme pain and **rendered me bedridden, unable to walk for days.**

(Docket #21 at 6) (emphasis added). Thus, the Court summarized: "Plaintiff [was prescribed] eight weeks of physical therapy, which Plaintiff found too painful to complete." (Docket #20 at 5). Plaintiff now explains that he "ceased doing the exercises *after* his physical therapy sessions abruptly ended." (Docket #24 at 1) (emphasis added). The Court will take note of this detail. To the extent it is relevant to the litigation, Plaintiff may submit an affidavit documenting his treatment at a time when submission of such evidence is warranted. However, Plaintiff is encouraged to read and re-read the Scheduling Order, which will accompany this Order, so that he understands how civil litigation proceeds.

Second, Plaintiff seeks to clarify and submit a claim of retaliation against Ludwig regarding her "[a]ctions, inactions, or obstruction in accessing his medical records for almost five months." (Docket #24 at 1). In his amended complaint, Plaintiff alleged that once Kettle Moraine Correctional Institution ("KMCI") "learned of [his] intent to file a complaint, [he] began to experience great difficulty in obtaining copies of [his] medical records." (Docket #21 at 10). Plaintiff alleged that Ludwig was

responsible for this obstruction. *Id.* To the extent that Plaintiff attempted to state an access-to-the-courts claim, he failed because there was no allegation that he experienced "some actual injury, such as the dismissal of a complaint or an inability to file a complaint at all." *Beese v. Todd*, 35 Fed. App'x 241, 243–44 (7th Cir. 2002). Indeed, Plaintiff has had no trouble accessing the courts.

Now, however, Plaintiff provides additional details of his interactions with Ludwig, which he believes amount to a constitutional violation. He includes a document titled, "consolidated conversations (verbatim) between Wooten and Health Service Unit Defendants," which the Court will construe as proposed amendments to the first amended complaint. *See* (Docket #24-1 at 22). These allegations demonstrate that Plaintiff sought his medical records repeatedly, but did not strictly follow the institution's protocol regarding records requests. For example, he did not file a disbursement, he requested file information from another institution and became frustrated when it was not readily available, and he expected that the institution would turn over personnel information regarding one of its physicians. Unsurprisingly, this resulted in some delay, and not all of Plaintiff's requests were met.

The exchanges demonstrate some confusion regarding who is responsible for obtaining records from Walworth County Jail (where Plaintiff first entered the prison system), as well as whether those records were complete and what types of documents Plaintiff could view during a file review. Plaintiff was granted a file review in December, February, and March. *See* (Docket #24-1 at 27–28). The files from Walworth County Jail were not complete; it seems that only information needed for follow-up was passed on to other institutions. *Id.* at 28. Indeed, one of Plaintiff's main

frustrations stems from this lack of complete medical records from Walworth County Jail. He communicated with both Ludwig and another healthcare professional, "Wronski," who has not been mentioned in Plaintiff's complaints. Plaintiff claims that the delays in receiving and reviewing his complete records are part of the retaliation that he experienced for threatening to file a federal complaint.

To articulate a claim for retaliation, Plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Plaintiff has a right to engage in litigation; the question is whether he has suffered a deprivation that would deter his First Amendment activity.

Here, Plaintiff's allegations fail. First, the initial delay was caused by his own failure to follow the institution's protocol regarding the disbursements. Then he experienced difficulty obtaining his complete file from Walworth County Jail—which, evidently, was not provided to the prison in full. But there is no basis to believe that Walworth County Jail's failure to provide a complete medical file to KMCI was made with intent to stifle Plaintiff's First Amendment rights. Lastly, according to Plaintiff's allegations, in a four-month period he received three file reviews, and had a request for another one pending as of March. Thus, while the institution's medical file review system may not function with the precision or alacrity that one might hope, Plaintiff's requests were not ignored. Moreover, while there was some delay and confusion surrounding which files Plaintiff wanted to see, the prison attempted to accommodate his requests.

Accordingly, these new allegations do not sufficiently state a claim that Ludwig retaliated against Plaintiff in violation of his First Amendment rights.

Finally, Plaintiff again seeks to bring a claim of deliberate indifference against his former physician, Kelley, regarding the discontinued sleep apnea treatment. The Court explained in its screening order, "Plaintiff has not sufficiently alleged that Kelley knew of the sleep apnea and ignored it." (Docket #20 at 9). In response, Plaintiff submits new allegations to demonstrate that Kelley was made aware of the sleep apnea and failed to address it. (Docket #24 at 2). However, these new allegations are also insufficient to establish a claim for deliberate indifference.

Plaintiff's new allegations do not establish that Kelley *knew* Plaintiff had sleep apnea and ignored it, as required to state a claim for deliberate indifference. These new allegations merely establish that Plaintiff believed that he had sleep apnea, and requested a sleep apnea test. Plaintiff thinks that his belief that he had sleep apnea is sufficient to establish that *Kelley* knew he had sleep apnea; it does not. Nor is the request of a diagnostic test sufficient to put Kelley on notice that Plaintiff had sleep apnea. At most, the request for a diagnostic test put Kelley on notice that there was a risk that Plaintiff *might* have sleep apnea. But there is no allegation that Kelley failed to administer the sleep apnea test, thereby ignoring that risk. Rather, Kelley administered the sleep apnea test; he just did so incompletely, and determined preemptively that Plaintiff did *not* have sleep apnea. The Court permitted Plaintiff to proceed on a claim against Kelley for negligence, under the logic that a reasonable physician in the same circumstances might have finished the preliminary examination before reaching such a conclusion. However, negligent conduct does not give rise to a claim for

deliberate indifference in violation of the Eighth Amendment. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

Accordingly,

**IT IS ORDERED** that Plaintiff's supplemental complaint information (Docket #24), to the extent it can be considered a motion to amend the complaint, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 6th day of May, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge