**BRADLEY A. WOOTEN,**

           **Plaintiff,**

v.                                              **Case No. 20-CV-124**

**DR. WILLIAM B. KELLEY,**

           **Defendant.**

## DECISION AND ORDER

Plaintiff Bradley A. Wooten, who is representing himself, brings this lawsuit under 42 U.S.C. § 1983. Wooten was allowed to proceed on various claims, but after the defendants filed a motion for summary judgment on the ground that Wooten had failed to exhaust his administrative remedies, only one constitutional claim remained—a claim against Dr. William B. Kelley under the Eighth Amendment for deliberate indifference to his medical needs. (ECF No. 96 at 9-10.) The court also exercised supplemental jurisdiction over Wooten's state law negligence claim against Dr. Kelley. (*Id.* at 14.)

Dr. Kelley has filed a motion for summary judgment on the merits. (ECF No. 102.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 5, 32.)

# FACTS

At all times relevant, plaintiff Bradley A. Wooten was incarcerated at Kettle Moraine Correctional Institution (KMCI). (ECF No. 129, ¶ 1.) Prior to his incarceration Wooten had been taking Gabapentin to manage his lower back pain, plantar fasciitis, and sciatica. (*Id.*, ¶¶ 6-9.) Gabapentin is primarily used as an anti-seizure medication and for treatment of residual pain from shingles. (*Id.*, ¶ 35.) However, it has an "off-label" use for treating lower back pain, meaning that, while it is legal to prescribe Gabapentin for treating lower back pain, Gabapentin cannot be advertised as a treatment for lower back pain because it has not yet meant certain scientific standards as required by the Food and Drug Administration. (*Id.*) Prior to his transfer to KMCI, on June 9, 2018, non-defendant Dr. Scott Hoftiezer determined that Wooten should be "tapered off" of Gabapentin. (ECF No. 126, ¶ 3.) For ten days Wooten would take 300 mg of Gabapentin, he would take 100 mg of Gabapentin for another ten days, and then quit using the drug entirely. (*Id.*, ¶ 4.)

Wooten was transferred to KMCI on June 26, 2018, with three days left in his program to wean off Gabapentin. (ECF No. 126, ¶ 5.) Defendant Dr. William B. Kelley was employed as a physician by the Wisconsin Department of Corrections and worked at KMCI from April 14, 2008, until he retired on April 15, 2019. (*Id.*, ¶ 2.) Dr. Kelley decided not to alter Dr. Hoftiezer's recommendation to taper Wooten off the Gabapentin. (*Id.*, ¶ 6.) On July 16, 2018, Wooten saw Dr. Kelley for the first time. (*Id.*, ¶ 7.) Wooten told Dr. Kelley that his back pain was currently causing him to be unable to work, exercise, sit, or lay down without experiencing high levels of pain; that

2

he was having problems sleeping, with depression, and with incontinence, and that generally, his quality of life was poor. (*Id.*, ¶ 9.) Wooten asked why he could not go back on Gabapentin because it had managed his pain for two years. (*Id.*, ¶ 8.)

Dr. Kelley told Wooten that there was no documentation of any back problems in his medical chart. (ECF No. 126, ¶ 10.) Wooten disputes this, saying that there was ample documentation of his chronic pain issues in his file. (*Id.*) Dr. Kelley also noted that Dr. Hoftiezer based his decision to taper Wooten off Gabapentin on the fact that Wooten was able to walk long distances and the absence of documentation supporting Wooten's claim of a herniated disc in his back. (*Id.,* ¶ 11.) Wooten asserts he informed Dr. Hoftiezer that he struggled climbing stairs, getting into his bunk, and could barely manage the short walk to the bathroom. (*Id.*)

Dr. Kelley proposed Duloxetine as a possible medication but stated that, before prescribing it, he needed to speak with Wooten's psychiatrist, Dr. Jeffrey Fait (non-defendant) because Dr. Kelley knew that Wooten was taking anti-depressants. (ECF No. 126., ¶ 12.) Gabapentin is a "criteria drug," meaning that, pursuant to DOC regulations, Dr. Kelley could not prescribe it to Wooten until Wooten completed a two-week trial of a combination of a tricyclic (anti-depressant) and Duloxetine. (*Id.*, ¶ 36.) On July 27, 2018, Dr. Kelley spoke with Dr. Fait, who approved the use of Duloxetine because he had just decreased Wooten's Venlafaxine (anti-depressant) prescription. (*Id.*, ¶ 14.) On August 3, 2018, Dr. Kelley prescribed 30 mg of Duloxetine daily. (*Id.*, ¶ 15.)

It is undisputed that by August 20, 2018, Wooten complained of side-effects from the Duloxetine. (ECF No. 126, ¶ 16.) Dr. Kelley describes those side effects as nausea. (*Id.*) Wooten describes them as "terrible and severe," and he was "overcome with pain . . .projectile vomiting, [and had] diarrhea" as a result of a reaction between the Duloxetine and Venlafaxine. (*Id.*, ¶¶ 16, 24.) Wooten sought help for the side effects, but his requests were ignored. (*Id.*, ¶ 16.) Dr. Kelley discontinued the Duloxetine. (*Id.*)

Dr. Kelley had a health services unit nurse speak with Wooten's unit sergeant to get a better understanding of how Wooten's back pain was impacting his day-to-day life. (ECF No. 126, ¶ 17.) Registered Nurse Teresa Giese spoke with Sgt. Farris, who reported that Wooten regularly took his Duloxetine, his gait was "always normal," and Wooten was "never limping, guarding, grimacing, or complaining of pain." (*Id.*, ¶ 17.) Wooten disputes this and submits declarations from several inmates who observed him while he was incarcerated, stating that his daily struggles with his pain were obvious, including the fact that he struggled with daily tasks, such as bending down, and that his ability to participate in recreation was limited. (ECF No. 115-11.)

Dr. Kelly asserts that he asked Wooten to get his pre-incarceration medical records so he could find justification for prescribing Gabapentin, but Wooten failed to provide them. (ECF No. 126, ¶ 18.) Wooten disputes this. He completed all the paperwork necessary on six separate occasions, authorizing Dr. Kelley to receive his medical records, but it was Dr. Kelley who failed to follow through to get the records. (*Id.*)

4

On October 10, 2018, Wooten was called to the Health Services Unit because he was not adhering to the Duloxetine prescription. (ECF No. 126, ¶ 19.) It is unclear from the record if between August 20, 2018, and October 10, 2018, Wooten resumed taking Duloxetine. Wooten suggests that Dr. Kelley's August 20 order to discontinue Duloxetine was never effectuated and he had to decline the medication daily. (*Id.*) At the October 10 appointment Wooten again complained of severe and violent side effects from Duloxetine, which Dr. Kelley described as an "upset stomach". (*Id.*) In his medical report dated October 11, 2018, Dr. Kelley noted that he discontinued Duloxetine, but Wooten failed to meet the criteria for Gabapentin because he had not taken Duloxetine for at least two weeks, which is necessary to declare it ineffective. (*Id.*, ¶ 20.) Wooten disputes this, stating that he met the criteria twice in that time period but was still denied Gabapentin. (*Id.*)

On November 15, 2018, Dr. Kelley prescribed Wooten 800 mg of Ibuprofen. (*Id.*, ¶ 21.) According to Dr. Kelley, on December 4, 2018, Wooten again asked for Gabapentin but was again denied because he had not met the criteria of trying Duloxetine for two weeks. (*Id.*, ¶ 22.) Wooten states that he told Dr. Kelley that "he was open to whatever treatment(s) could provide relief," but he does acknowledge that he did question why he could not go back to the pain regimen (Gabapentin) that had worked for over two years. (*Id.*) Also, Wooten notes that in Dr. Kelly's December 4, 2018, report he notes that "plaintiff had stopped taking Duloxetine after 2-weeks because of nausea," suggesting that Wooten had in fact met the criteria for resuming Gabapentin. (*Id.*)

5

Wooten took 800 mg of Ibuprofen and 500 mg of Acetaminophen twice daily, but on December 7, 2018, wrote another health services request asking to resume taking Duloxetine because the Ibuprofen and Acetaminophen were not working. (ECF No. 126, ¶ 24.) According to Wooten, Dr. Kelley told him he would have to suffer through the side effects caused by mixing Duloxetine and Venlafaxine "for a significant period" before Dr. Kelley would declare Duloxetine ineffective, allowing Wooten to meet the criteria for resuming Gabapentin. (*Id.*) By December 11, 2018, Wooten had again stopped taking Duloxetine because of the severe side effects, and Dr. Kelley discontinued the prescription. (*Id.*, ¶¶ 25-26.) Dr. Kelley noted that Wooten again had failed to meet the criteria for resuming taking Gabapentin. (*Id.*, ¶ 26.)

On January 14, 2019, Wooten again tried Duloxetine but took it at a different time of day than before, hoping it would mitigate the side effects. (ECF No. 126, ¶ 27.) At some point (it is unclear from the record when) Wooten apparently again stopped taking Duloxetine due to side effects. It also does not appear that Wooten ever qualified for Gabapentin under Dr. Kelley's care. Dr. Kelley did try other treatments for Wooten between January 14, 2019, and his retirement in April 2019, including a Transcutaneous Electronic Nerve Stimulation (TENS) treatment as well as a physical therapy evaluation. (*Id.*, ¶ 28.) Wooten states that Dr. Kelley could have tired intermittent muscles relaxers or orthotics as well, but Dr. Kelley did not. (*Id.*, ¶ 33.)

Wooten notes that, when he transferred to Oakhill, he received two steroid shots that provided relief. (ECF No. 126, ¶ 34.) Also, once at Oakhill he went back on Gabapentin, and he states his quality of life drastically improved. (*Id.*, ¶35.) Wooten

also states he does not have a history of abusing medication and was not disciplined for it while under Dr. Kelley's care. (*Id.*)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'"

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*Deliberate Indifference to Medical Needs*

Wooten claims that Dr. Kelley violated his Eighth Amendment rights when he persisted to treat his back pain with medication that was ineffective. The Eighth Amendment "protects prisoners from prison officials from conditions that cause 'the wanton and unnecessary infliction of pain' including . . . grossly inadequate medical care.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2015) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Courts "use a two-part test to determine if medical care amounted to cruel and unusual punishment . . . 'whether the plaintiff suffered from an objectively serious medical condition' and 'whether the individual defendant was deliberately indifferent to that condition.'" *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Petties v. Carter*, 836 F.3d 722, 727-728 (7th Cir. 2016).

The parties do not dispute that Wooten's back pain amounted to an objectively serious medical condition. The only issue is whether Dr. Kelley's treatment constituted deliberate indifference. "To show deliberate indifference, 'a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm.'" *Id.* (quoting *Petties*, 836 F.3d at 728.) (emphasis in original). Such a showing requires showing that the official had "'a subjective state of mind' somewhere between negligence and intention.'" *Id.* "[A]n inmate can establish deliberate indifference by

8

showing that medical personnel persisted with a course of treatment they knew to be ineffective." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citing *Greeno v. Daley*, 414 F.3d 645, 654-655 (7th Cir. 2005)). Indeed, "[a] physician's decision to persist with ineffective treatment and ignore a patient's repeated complaints of unresolved pain or other symptoms can give rise to liability—or, at the very least, raise enough questions to warrant a jury trial." *Id.* at 1027-28. "Put most bluntly, faced with an inmate experiencing ongoing suffering from a serious medical condition, a prison physician cannot 'doggedly persis[t] in a course of treatment known to be ineffective' without violating the Eighth Amendment.'" *Id.* (quoting *Greeno*, 414 F.3d at 655).

Dr. Kelley frames the issue as whether he was deliberately indifferent for refusing to provide Wooten with Gabapentin. He argues that, because Gabapentin is a "criteria drug," the Wisconsin Department of Corrections' policies prohibited him from prescribing Gabapentin because Wooten never tried using Duloxetine for at least two weeks.

Dr. Kelley frames the issue too narrowly. While Wooten would have preferred Gabapentin, he was open to any effective treatment, but Dr. Kelley declined to provide it. While declining to provide Gabapentin may have been constitutionally permissible because Dr. Kelley was following DOC procedures, a question of fact exists as to whether Dr. Kelley's treatment plan as a whole reflected deliberate indifference to Wooten's condition.

9

For example, Dr. Kelley states that Wooten's medical file lacked any evidence of chronic back pain that would warrant the off-label usage of Gabapentin. Wooten asserts that his back pain was well-documented, and Dr. Kelley had access to that information. A question of fact also exists as to who is at fault for failing to procure Wooten's pre-incarceration medical records, which may have provided justification for a Gabapentin prescription.

Dr. Kelley also implies that Wooten was exaggerating the impact his back pain was having on his daily life in an attempt to get Gabapentin, highlighting that Wooten's unit sergeant did not notice an unusual gait or any signs of intense pain. Wooten directly disputes this by providing several declarations from inmates who witnessed his day-to-day activity, all of whom swear that Wooten was obviously in severe pain and had trouble engaging in everyday activities. In short, a dispute of facts exists as to whether Wooten was merely disagreeing with Dr. Kelley's chosen course of action, which is clearly insufficient to support a claim under the Eighth Amendment, *see Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), or whether Dr. Kelley was deliberately indifferent to Wooten's reporting of his suffering. *See Goodloe*, 947 F.3d at 1027; *Greeno*, 414 F.3d at 655.

Dr. Kelley's repeated insistence that Wooten successfully complete a trial of Duloxetine also raises questions of material fact. Wooten asserts he repeatedly told Dr. Kelley that the Duloxetine was causing severe side effects because it did not mix well with the Venlafaxine he was also taking. Wooten wanted Dr. Kelley to try other treatments, including but not limited to prescribing Gabapentin, but Dr. Kelley

10

Case 2:20-cv-00124-WED   Filed 07/06/22   Page 10 of 14   Document 128

refused to try anything else. Dr. Kelley, on the other hand, minimizes Wooten's side effects, characterizing Wooten's them as mere nausea and stomach discomfort.

Whether Wooten's side effects were severe, whether Dr. Kelley's insistence that Wooten stick with the Duloxetine despite severe side effects, whether Dr. Kelley refused to provide other forms of treatment knowing that Duloxetine was causing Wooten suffering, whether Dr. Kelley failed to treat Wooten's side effects, and whether all of these facts or some combination of them amount to deliberate indifference are questions for a jury. In other words, a question of material fact exists as to whether Dr. Kelley's insistence that Wooten take Duloxetine was akin to him "doggedly persisting in a course of treatment known to be ineffective." *See Greeno*, 414 F.3d a 655. A jury could reasonably conclude that it did, and that Dr. Kelley was deliberately indifferent.

*Qualified Immunity*

Dr. Kelley argues that, even if the court concludes that a genuine dispute of material fact exists as to whether he was deliberately indifferent to Wooten's condition, the court should nevertheless grant summary judgment in his favor because he is entitled to qualified immunity. To determine whether qualified immunity applies, the court must consider "(1) whether the defendant[] violated a constitutional right, and (2) whether the constitutional right was clearly established." *Broadfield v. McGrath*, 737 Fed. Appx. 773, 775 (7th Cir. 2018).

As discussed above, it has already been determined that a reasonable factfinder could conclude that Dr. Kelley was deliberately indifferent to Wooten's back pain by

11

rendering ineffective treatment. The only remaining question is whether the rights Dr. Kelley may have violated were clearly established. Dr. Kelley argues that there is no precedent establishing that "refusing to prescribe a medication known to be both ineffective for the condition at issue and highly susceptible to misuse and offering alternatives that are more likely to help the patient's conditions was constitutionally permissible." (ECF No. 103 at 10.) However, again Dr. Kelley frames the issue too narrowly. The question is whether Dr. Kelley persisted in a course of treatment known to be ineffective. In June 2018 the law on the question of whether persisting in a course of treatment known to be ineffective violates the Eighth Amendment had long been settled. *See Greeno*, 414 F.3d at 655. Thus, Dr. Kelley is not entitled to qualified immunity.

*State Law Negligence Claim*

Dr. Kelley also argues that the court should dismiss Wooten's state law medical malpractice claim because he failed to obtain an expert witness to testify to the relevant standard of care required. "Wisconsin law requires that an expert witness testify to establish the standard of care in a medical malpractice case, unless 'the situation is one where the common knowledge of laymen affords a basis for finding negligence.'" *Wilson v. Adams*, 901 F.3d 816 (7th Cir. 2018) (quoting *Christianson v. Downs*, 90 Wis. 2d 332, 279 N.W.2d 918, 921 (1979)). It is undisputed that Wooten has not obtained an expert. Nevertheless, Wooten argues that Dr. Kelley can serve as an expert witness to establish the standard of care. But there is a state law privilege against compelled expert testimony, which applies in federal court. Fed. R. Evid. 501;

12

*In re Imposition of Sanctions in Alt v. Cline*, 224 Wis. 2d 72, 589 N.W.2d 21, 25-26 (Wis. 1999). As such, Wooten cannot compel Dr. Kelley to testify to the standard of care required.

Wooten also asserts that Dr. Kelley's care was obviously negligent and that no expert is required; a layperson could determine that Dr. Kelley's care fell far outside the bounds of what was appropriate. In certain situations, an expert is not required to prove that a doctor was negligent. For example, where a doctor left a sponge inside of a patient, or where he amputated the wrong limb. *Fehrman v. Smirl*, 20 Wis.2d 1, 121 N.W.2d 255, 266-67 (Wis. 1963). Here, it would not be obvious to a lay person that persisting to treat Wooten with Duloxetine despite the side effects was negligent or that failing to prescribe Gabapentin was negligent. Wooten's state law claim is dismissed.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted in part and denied in part. The court grants summary judgment on Wooten's state law negligence claim but denies summary judgment on Wooten's Eighth Amendment claim for deliberate indifference to his medical needs. Because Wooten's Eighth Amendment claim has survived summary judgment, the court will set up a scheduling conference to discuss next steps.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Dr. Kelley's motion for summary judgment (ECF No. 102) is **GRANTED in part and DENIED in part**. Wooten's state law negligence claim is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 6th day of July, 2022.

BY THE COURT

*William E. Duffin*

WILLIAM E. DUFFIN
United States Magistrate Judge